Per Curiam :
This case pursues the claims, under the Indian Claims Commission Act, of groups of Iowa and Sac and Fox Indians to additional compensation for Royce Area *367 69 in Missouri, which was ceded by each of those Nations to the United States in 1824. Treaties of August 4,1824,7 Stat. 229, 231. In prior decisions the Indian Claims Commission decided that the Iowa held aboriginal title to 1,551,200 acres in the northwest corner of Area 69, while the Sac and Fox had the same kind of ownership of 1,241,700 acres in the northeast corner of the Area (6 Ind. Cl. Comm. 496 (1958)), for which they were respectively entitled to $678,193.77 and $965,560.39 in extra compensation (less offsets) because the treaty consideration was unconscionably low (12 Ind. Cl. Comm. 487 (1963); 15 Ind. Cl. Comm. 248 (1965)). The land lying between the two separate awarded sectors was not assigned by the Commission to either the Iowas or the Sac and Fox.
On appeal by the Indians, arguing inter alia that the territory allocated to them was too small and that the in-between segment should also be considered theirs, this court held that, in determining the acreage to be awarded, the Commission had “committed error in refusing to consider the evidence of the tribes as to Indian title acquired by them between 1803 [when this country obtained sovereignty over the area through the Louisiana Purchase] and 1824 [when the land was ceded by the Indians to the United States by the treaties]. * * * [U]se and occupancy immediately prior to 1803, could well have been use and occupancy ‘for a longtime’ and sufficient to constitute Indian title to the land.” We remanded the case so that the Commission could consider “Indian title evidence between 1803 and 1824, so that it may determine from such evidence whether or not the land awarded to the Iowa or the Sac and Fox, or either of them, should be increased or changed in any way * * Sao and Fox Tribe v. United States, 179 Ct. Cl. 8, 23, 383 F. 2d 991, 999, cert. denied, 389 U.S. 900 (1967).
The Commission then made just such a review, and in a comprehensive opinion of some 96 pages (22 Ind. Cl. Comm. 232 (1969)) — which in effect constituted its new factual findings — determined, with one dissent, that “neither the Iowa plaintiffs nor the Sac and Fox plaintiffs have met their burden of proving by a preponderance of the evidence, their *368 actual, exclusive and continuous use and occupancy of additional lands for a long period of time prior to August 4,1824 [the date of the treaties of cession]. Accordingly, the areas of land credited to the plaintiffs in our decision of July 2, 1958 [6 Bid. Cl. Comm. 496] should not be changed in any way.” 22 Ind. Cl. Comm, at 328.
Appealing here again, the plaintiffs have presented their case in detailed briefs totaling 295 pages. The Government’s brief supporting the decision below comes to 153 pages. Oral argument has also been had. After considering this entire presentation we are compelled to conclude: first, that the controlling issues are of fact; second, that the Commission’s determination of those factual questions is plainly supported by substantial evidence on the record as a whole; and, third, that this factual determination by the Commission is not infected by any relevant or significant legal error.
It would be pointless for us to discuss the myriad items of evidence (documents, other material, and testimony) which have been put forward by one side or the other, and for the most part discussed by the Commission. Suffice it to say that nothing proffered by appellants is at all decisive — no single piece of evidence, and no combination of evidential items, demands the result for which the tribes argue — and that we are convinced that the Commission made a careful and conscientious effort to comply with our mandate and to resolve the factual issue of whether aboriginal title to any of the previously unawarded parts of Area 69 was proved, in combination with the evidence relating to the pre-1803 period, by the evidence dealing with the years 1803-1824. We emphasize that none of the significant historical materials in the case is so specific or so clear that it forces a determination favorable to appellants; on the contrary, almost all of the items of historical evidence are phrased in such general, unclear, or unspecific terms that the trier, sometimes with the help of expert testimony, must engage in considerable interpretation, against the document’s background and in its context, to determine exact meaning and coverage. This is what the Commission painstakingly did, and, though appellants disagree vigorously with most of its readings and evaluations, it plainly acted well within its province as the *369 trier. Where the evidence, as here, is neither sharp nor decisive, nor overwhelmingly one way, the fact-finding tribunal must make its own judgments and its choices. We have no option hut to conclude that the evidence on which the Commission relied for its resolution of the factual questions is substantial and adequate when weighed against the record as a whole, and that the result the 'Commission reached is entirely reasonable.
From the appellants’ viewpoint, the best that can be said is that their interpretations of the documents and the evidence are likewise reasonable. But that is obviously not enough to call for a reversal. We must stop when we conclude, as we do, that the Commission’s determination is reasonable and is supported by substantial evidence on the whole record. Osage Nation v. United States, 119 Ct. Cl. 592, 603 ff., 97 F. Supp. 381, 387 ff., cert. denied, 342 U.S. 896 (1951); Sac and Fox Tribe v. United States, 159 Ct. Cl. 247, 253 (1962); Sac and Fox Tribe v. United States, 161 Ct. Cl. 189, 201, 203, 207, 315 F. 2d 896, 902, 903, 906, cert. denied, 375 U.S. 921 (1963); Confederated Tribes of the Warm Springs Reservation v. United States, 177 Ct. Cl. 184, 207-08 (1966). Appellants say that the Commission went counter to certain background statements in our earlier opinion (179 Ct. Cl. at 13-19, 383 F. 2d at 993-96), but we did not intend in that historical summary, which was simply a general prelude to our consideration of the issues then before us, to bar the Commission from canvassing the evidence for itself in response to the order of remand.
We mention briefly two other matters which appellants stress. The first is the claim that the decision below is contrary to the Commission’s findings and determinations in other cases involving areas near or adjacent to Cession 69. We find no disabling inconsistency. As the Commission explained, certain of the examples cited by appellants involved recognized, not aboriginal, title, and in dividing up that territory between those claiming tribes the Commission did not use, and did not have to use, the concept and standards of aboriginal title which govern the present case. The other instances given by appellants concern unnecessarily broad or general statements in earlier cases, superfluous to the *370 actual holdings, which the Commission had the right to review, refine and correct in the current proceeding.
Appellants also urge that the Commission erred in holding that the Iowa and the Sac and Fox did not have joint Indian title to the unawarded land in Area 69. The court has acknowledged the general possibility that two or more tribes or groups might acquire aboriginal title by inhabiting certain territory in “joint and amicable possession” (Sac and Fox Tribe v. United States, supra, 161 Ct. Cl. at 202 n. 11, 315 F. 2d at 903 n. 11; Confederated Tribe of Warm Springs Reservation v. United States, supra, 177 Ct. Cl. at 194 n. 6), but we have never purported to define the specific circumstances in which that could or would occur. The Commission was not wrong in refusing to find such joint acquisition here. The Iowas and the Sac and Fox did not consider themselves, and were not treated, as a single or closely integrated entity, but rather as separate political groups which were friends or allies (for the most part). Their use of the same lands may have been in common — like much of Indian use of the mid-western and western regions — but the Commission could properly decide that it was not proved to be truly joint, and therefore that each separate tribe’s claim to Indian title would have to be tested on its own distinct basis.
Finding a substantial foundation for the Commission’s factual determinations and no pertinent error of law, we uphold the decision below.

Affirmed